IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES EDWARDS BATES,<br><br>                    Petitioner,<br><br>          vs.<br><br>JOE A. LIZARRAGA, Acting Warden,<br>Mule Creek State Prison,[1]<br><br>                    Respondent. | No. 2:11-cv-02840-JKS<br><br>MEMORANDUM DECISION |

James Edwards Bates, a state prisoner proceeding *pro se*, filed a Petition for a Writ of

Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Bates is currently in the custody of

the California Department of Corrections and Rehabilitation and is incarcerated at Mule Creek

State Prison. Respondent has answered, and Bates has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

One fact not mentioned by the California Court of Appeal on direct review is that Bates

is the father of his victim. Otherwise, the California Court of Appeal recounted the factual

background of this case as follows:

> [Bates] began sexually molesting the victim when she was 14 years old. Eleven
> years earlier, he had molested the victim's then 7-year-old sister.
> After [Bates] was released from custody for the earlier offense, the victim began
> visiting him at his residence in Stockton, where he lived in a shed in the backyard of a
> home. In September and October 2003, she lived with him in the shed, along with her
> cats.
> [Bates] had threatened the victim that if she did not come and stay the night with
> him, he would kill one of her cats. Indeed, he choked a kitten to death and brought the

---

[1]          Joe A. Lizarraga, Acting Warden, Mule Creek State Prison, is substituted for M.
Martel, former Warden, Mule Creek State Prison. FED. R. CIV. P. 25(d).

dead kitten to the victim at her mother's house in Stockton.  He told the victim it was her fault because she had not wanted to come to his place of residence.

In September and October 2003, [Bates] started having sexual intercourse with the victim at his shed and at her mother's house.  [Bates] pressured the victim to have sex; sometimes he hit her with a back scratcher, and other times he hit her on the face and legs.  She felt that she could not get away because [Bates] would hit her and she was afraid of the dog that lived on the property.  [Bates] had intercourse with the victim over 20 times, and she became pregnant while staying at the shed.  [Bates] also made the victim masturbate him and orally copulate him.

At the end of 2003 or beginning of 2004, the victim and her mother moved to an apartment in Sacramento.  [Bates] would visit the victim there.

At trial, the victim testified she orally copulated [Bates] only twice, both times in Sacramento, against her will.  On one of those occasions, [Bates] called her a bitch and hit her hard in the stomach, even though she was pregnant at the time.  She denied that the oral copulation occurred in Stockton.  However, when she had been interviewed by a social worker, the victim said [Bates] had made her orally copulate him more than 10 times.  And she had told a detective that "everything" happened in Stockton.

The victim, who had given birth to their child, testified that she loved [Bates] and she did not want him to get into trouble.  An expert testified about child sexual abuse accommodation syndrome.

After the victim had testified, and during the detective's testimony, defense counsel objected to any evidence about incidents that might have occurred in Sacramento.  Counsel ultimately made a motion for judgment of acquittal of the two counts of forcible oral copulation, on the ground that the only evidence offered in support of the charges is that the acts occurred in Sacramento County, not in San Joaquin County as alleged in the charging document.  ([California] Pen. Code, § 1118.1; further section references are to the Penal Code.)  The motion was denied.[1]

> FN 1.  The court also denied [Bates's] subsequent motion for a new trial on the ground that there was insufficient evidence "any act of oral copulation was ever accomplished in San Joaquin County."

At [Bates's] request, the jury was instructed that the jury could convict [him] only of crimes that occurred in San Joaquin County.

*People v. Bates*, C056450, 2009 WL 3675729, at *1-2 (Cal. Ct. App. Nov. 5, 2009).

A jury convicted Bates of two counts of forcible oral copulation, two counts of forcible rape, and one count of sexual battery by restraint.  *Id*. at *1.  He was sentenced to an aggregate term of 100 years to life in state prison.  *Id*.

-2-

Through counsel, Bates directly appealed, arguing that his oral copulation convictions must be reversed because the evidence was insufficient to prove that those crimes occurred in San Joaquin County, and therefore the trial court "lacked territorial jurisdiction."  The Court of Appeal construed the claim as an evidentiary issue, and concluded in a reasoned, unpublished opinion that there was substantial evidence from which the jury could find that the charged offenses of forced oral copulation occurred at the house of the victim's mother in Stockton and at the shed in Stockton where the victim stayed with Bates in September and October 2003.  *Id.* at *3.

Bates filed a counseled petition for review, arguing that the evidence was insufficient to support his convictions for forcible oral copulation.  The California Supreme Court summarily denied review.

Bates filed a *pro se* petition for habeas corpus relief with the superior court in which he argued that there was insufficient evidence of force because the victim testified "that she wanted to have sex," that Bates "did not pressure her to do anything sexual," and that "she did not want to wait until she was 18."  He further argued that trial counsel was ineffective because he "provided no defence [sic]."  The superior court concluded that to the extent that this claim was raised and rejected on direct appeal, it could not be raised on habeas corpus review.  And to the extent Bates alleged that there was insufficient evidence of force with respect to convictions other than forcible oral copulation or that counsel was ineffective, the claims relied on the record and should have been brought on direct appeal.  The court further concluded that his claim of ineffective assistance of counsel was belied by the record and otherwise unsupported by evidence.

Bates then filed a *pro se* petition for habeas relief with the California Court of Appeal, again alleging that there was insufficient evidence of force and that trial counsel was incompetent.  In particular, he claimed defense counsel failed to present to the jury letters which the victim wrote Bates after the alleged crimes occurred which indicated that she "may well have consented to the acts which were alleged to have been forced against her."  The Court of Appeal summarily denied habeas relief.

Finally, Bates filed a *pro se* petition for habeas relief with the California Supreme Court, again alleging that there was insufficient evidence of force and that trial counsel was ineffective. The supreme court summarily denied relief.  Bates filed his undated *pro se* Petition with this Court on October 12, 2011.  Respondent does not argue that the Petition is untimely.

## II. GROUNDS RAISED

In his Petition before this Court, Bates argues that: 1) there was insufficient evidence to show there was "any force"; 2) there was insufficient evidence that the two charges of forcible oral copulation occurred in San Joaquin County; and 3) trial counsel was ineffective for failing to present a defense, failing to call witnesses, and failing to present letters from the victim to Bates which would show she consented to the acts.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding,"

§ 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."  *Id.* at 412.  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.  *Early v. Packer*, 537 U.S. 3, 10 (2002).  Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"  *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court.  *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)).  Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

IV. DISCUSSION

Claim One: Insufficient Evidence

Bates argues that the evidence was insufficient to establish that there was "any force" and that the charges of forcible oral copulation occurred in San Joaquin County.  He raised the claim that there was insufficient evidence to support his convictions for forcible oral copulation on direct appeal, which the Court of Appeal rejected as follows:

> The matter presented at trial actually was an evidentiary issue [rather one of territorial jurisdiction], i.e., was there sufficient evidence that forcible oral copulation occurred in San Joaquin County as was alleged in the information?  The jurors were asked to determine this as a factual matter beyond a reasonable doubt.  They were specifically instructed on this point.
>
> Thus, the claim on appeal is really a claim of insufficient evidence to support the conviction, which is how we will address it.
>
> In assessing a claim of insufficient evidence, we view all the evidence in the light most favorable to the judgment and presume in support thereof the existence of every fact the jurors reasonably could deduce from the evidence; "we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder."  (*People v. Jones* (1990) 51 Cal. 3d 294, 314.)
>
> Applying this standard of review, we find substantial evidence supports the jury's determination that acts of forcible copulation took place in San Joaquin County.
>
> The victim initially told the detective that "everything" happened in Stockton.  At trial, the victim testified that, while she did not tell the social worker about all that happened between the victim and [Bates], everything she told the social worker was true.  This necessarily included that she orally copulated [Bates] more than 10 times.  A videotape of her interview by the social worker was shown to the jurors.  In light of evidence of the victim's remaining feelings for [Bates], and the expert testimony on a child abuse victim's tendency towards secrecy, accommodation, and statement retraction, the jurors reasonably could have believed the victim's statements to the detective and the social worker over the victim's inconsistent testimony at trial.
>
> Throughout her testimony and interviews, the victim made it clear that she did not want to orally copulate [Bates].[3]  In her interview with the social worker, the victim was asked if [Bates] ever made her do anything she did not want to do.  She replied that he made her orally copulate and masturbate him.  Asked by the social worker why she could not get away from [Bates] when he was asking her to do things she did not want to do, the victim talked about the dog and also about [Bates] hitting her.  The dog was a reference to the dog on the property in Stockton where [Bates's] backyard shed was located.  This evidence supports a finding that acts of forced oral copulation occurred in San Joaquin County.

FN 3.  At rial, she testified she wanted to have sexual intercourse with him.

After talking about a specific act of oral copulation that "I don't like," the victim was asked whether there was a place other than the shed where anything happened.  She replied: "At my mom's house," where her "mom wouldn't let him stay the night."  The victim's mother testified that she had not allowed [Bates] to stay overnight at her house in Stockton, but he would spend up to four to five nights at her Sacramento apartment when he visited there.  It also appears the victim, the prosecutor, and defense counsel generally referred to the mother's house in Stockton as "mom's house" and to the apartment in Sacramento by using the name of the street it was on.  This, too, supports the finding that acts of forcible oral copulation occurred in Stockton.

In sum, there was substantial evidence from which the jury could find that the charged offenses of forcible oral copulation occurred at the house of the victim's mother in Stockton and at the shed in Stockton where the victim stayed with defendant in September and October 2003.

*Bates*, 2009 WL 3675729, at *2-3.

On habeas review, Bates expanded his argument, asserting that there was no evidence of "any force," not just with respect to the forcible oral copulation charge.  The superior court denied relief, concluding that to the extent the claim had been raised and rejected on direct appeal, the claim could not be resurrected in a petition for habeas relief.  The court further concluded that his insufficiency of the evidence argument relies on the record and should have been raised on direct appeal.

As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see also McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard).  This Court must therefore determine whether the California court unreasonably applied *Jackson*.  In making this determination, this Court may not usurp the role of the finder of fact by

considering how it would have resolved any conflicts in the evidence, made the inferences, or

considered the evidence at trial.  *Jackson*, 443 U.S. at 318-19.  Rather, when "faced with a

record of historical facts that supports conflicting inferences," this Court "must presume–even if

it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in

favor of the prosecution, and defer to that resolution."  *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority

for defining and enforcing the criminal law.  *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

Consequently, although the sufficiency of the evidence review by this Court is grounded in the

Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set

forth in state law.  *Jackson*, 443 U.S. at 324 n.16.  This Court must also be ever mindful of the

deference owed to the trier of fact and the sharply limited nature of constitutional sufficiency

review.  *Juan H. v. Allen*, 408 F.3d 1262, 1275 (9th Cir. 2005).  A fundamental principle of our

federal system is "that a state court's interpretation of state law, including one announced on

direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."

*Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam).

Bates was convicted of committing two counts of forcible rape in violation of California

Penal Code 261(a)(2), two counts of forcible oral copulation in violation of California Penal

Code § 288a(c)(2), and one count of sexual battery by restraint in violation of California Penal

Code § 243.4(a).  Bates argues that there was insufficient evidence of "any force," apparently in

a challenge to all of his convictions.  California Penal Code § 261(a)(2) prohibits rape, defined as

"sexual intercourse accomplished with a person not the spouse of the perpetrator . . . against a

person's will by means of force, violence, duress, menace, or fear of immediate and unlawful

bodily injury."  California Penal Code § 288a(c)(2) prohibits oral copulation "when the act is

accomplished against the victim's will by means of force, violence, duress, menace, or fear of

immediate and unlawful bodily injury, on the victim or another person."  Finally, California

Penal Code § 243.4(a) prohibits sexual battery, defined as the touching of the "intimate part of

another person while that person is unlawfully restrained by the accused or an accomplice"

where the "touching is against the will of the person touched and is for the purpose of sexual

arousal, sexual gratification, or sexual abuse."  "Unlawful restraint" does not require a showing

of physical restraint; psychological force may be sufficient.  *People v. Grant*, 10 Cal. Rptr. 2d

828, 832-33 (Cal. Ct. App. 1992).  As mentioned *supra*, at Bates's request, the jury was

instructed that it could convict him only of crimes that occurred in San Joaquin County.

Stockton is in San Joaquin County; Sacramento is not.

      The victim was very reluctant to testify against her father.  At one point the court had to

threaten her with jail time if she was not candid with her responses.  She loved her father and

claimed that she wanted to have sex with him.  She testified that Bates told her that she should

wait to have sex until she was 18 years old, but that she did not want to wait.  However, she did

not like performing fellatio on him.  After their baby was born, she denied to those that asked

that Bates was the father because she "didn't want [her] dad to get in trouble."  She repeatedly

stated that she still didn't want him to get in trouble.  She also testified that Bates told her that

after he served his jail time, he, the victim and their son would move out of California and "be

together."

      The victim testified that she only engaged in oral copulation with Bates twice, and that

both instances occurred in Sacramento, not Stockton.  On one occasion, Bates was drunk and

asked her to perform fellatio.  She was four and one-half months pregnant at the time.  After she refused more than twice, he called her a "bitch" and then hit her in the stomach, which caused pain.  On another occasion, Bates approached her while she was laying down, held down her arms and legs, and put his penis in her mouth.  He also hit her with a back scratcher at unidentified times and hit her in general when he was mad.

The victim testified that she began having sex with Bates in 2003, when he was living in a backyard shed with two of her mother's cats three blocks from her mother's house in Stockton. She testified that she had sex with him more than 20 times at her "mom's house," and generally referred to her residence in Stockton as her "mom's house" in contrast to her mother's place in Sacramento, which she referred to by the name of the apartment complex.  She became pregnant as a result of having sex with her father in the Stockton shed.  At times, She wanted to leave the shed but Bates wouldn't let her.  The victim additionally testified that on one occasion Bates told her that if she didn't come over and spend the night with him at the shed he would kill one of the cats.  Bates followed through on his promise.  He killed a cat, brought it over to the victim at her mother's residence, told the victim that it was her fault he killed it, and dropped it in front of her.

In addition, the victim testified both on direct and on cross-examination that she had told the forensic interviewer at the Child Advocacy Center the truth.  She admitted that she told the interviewer that Bates pressured her to have sex, and that she was mad because she "didn't want to do it."  She also told the interviewer that "the things that happened with [Bates]" happened in the shed near her mom's house.  She also admitted that she told the interviewer that Bates made her perform fellatio over 10 times.  The victim also testified that she thought she recalled telling

Detective Schoffield that "everything" happened in Stockton.  She also admitted that she told the detective that she didn't want to have sex and that she was supposed to be a virgin.

Although the victim claimed that the forced oral copulation occurred in Sacramento and not Stockton, she was motivated to lie to protect Bates out of some unsettling love she still harbored for him and her testimony was contradictory.  The jury could have concluded based on her statements to the forensic interviewer, which the victim claimed to be true, that she performed fellatio on Bates more than twice and that it occurred in Stockton where she lived for a time in her father's shed and became pregnant with his baby.  In addition, she told the detective that "everything" happened in Stockton.  And although the victim claimed that the intercourse was consensual, there was evidence that her father in fact threatened her and forced her to have sex on at least some of the occasions, including laying a dead cat at her feet to induce her to comply with his demand that she come to the shed.  On at least one occasion he did not want her to leave the shed, and a jury could have reasonably concluded that she complied out of fear that he might hurt her, the other cat, or other individuals, if she did not comply.  In sum, there was sufficient evidence of force and that the oral copulation occurred in Stockton.

Claim Two: Ineffective Assistance of Trial Counsel

Bates next argues that his trial counsel was ineffective for failing to introduce letters that the victim wrote to him in 2004 which would show that the sexual activity was consensual, for failing to put on a defense, and for failing to call any witnesses.  He raised his ineffective assistance of counsel claim in his petition for habeas relief to the superior court, which denied relief.  The court concluded that his ineffective assistance of trial counsel claim was partially belied by the Appellate Court's finding that the victim testified that she loved Bates and did not

wish to get him in trouble.  The court further concluded that he failed to provide any support for his other ineffective assistance of counsel claims.

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.  466 U.S. 668, 687 (1984).  A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.*  The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief.  *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95.  Thus, Bates must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.  *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs.  *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold."  And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

It is through this highly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d) standard. *See Knowles*, 556 U.S. at 123 (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

Bates attached to his petition several letters written by the victim to him in 2004 after the crimes occurred. In those letters, the victim states that she loves Bates and that she wants his "love and . . . body." She also describes herself as Bates's girlfriend, and says she wants to be his wife and that they will be "together forever." She apologizes for hurting him and begs for forgiveness. She also expresses jealousy over the sister Bates previously molested, claiming that Bates said he wants no one but the sister. On the one hand, while the letters are indicative of consent, they could have been damaging to Bates because they highlight the disturbing nature of his relationship with both of his daughters. Counsel mitigated this potential by eliciting testimony from the victim on cross-examination about the letters she wrote to her father. She admitted that she identified herself as her father's girlfriend, that she was in love with him, and that she wanted to be with him. Counsel was therefore effectively able to elicit the tenor of the letters while eliminating any prejudicial effect that their actual introduction might have on the jury, and was not ineffective in this regard.

In addition, the ultimate decision not to call witnesses to testify is well within counsel's "full authority to manage the conduct of the [proceeding]." *Taylor v. Illinois*, 484 U.S. 400, 418 (1988) ("Putting to one side the exceptional cases in which counsel is ineffective, the client must accept the consequences of the lawyer's decision . . . to decide not to put certain witnesses on the

-13-

stand . . . ."); *Lord v. Wood*, 184 F.3d 1083, 1095 (9th Cir. 1999) ("Few decisions a lawyer makes draw so heavily on professional judgment as whether or not to proffer a witness at trial."). Bates has not indicated what witnesses defense counsel should have called, what they would have testified to, or what additional arguments he should have raised besides consent and thus cannot prevail on his ineffective assistance of counsel claim. *See Dows v. Wood,* 211 F.3d 480, 486 (9th Cir. 2000) (denying ineffective assistance of counsel claim based on lack of preparation for failure to call witness where there was no evidence that the witness existed, other than from petitioner's self-serving affidavit, and petitioner failed to provide an affidavit from the alleged witness). He has failed to overcome the strong presumption that his trial counsel's conduct fell within the wide range of reasonable professional assistance because he cannot show that the failure to call any alleged witnesses was anything but a tactical decision which this Court cannot second-guess.

## V. CONCLUSION AND ORDER

Bates is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree

with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: June 10, 2014.

/s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge